# EXHIBIT D-1

1 CIT ESERVE

5/16/2024 11:05 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Stephanie Clark DEPUTY

DC-24-07221

Cause No. DC-24-_____

| | | |
|---|---|---|
| RYAN, LLC, | § | IN THE DISTRICT COURT |
| | § | 134th |
| Plaintiff, | § | |
| | § | |
| v. | § | _____ JUDICIAL DISTRICT |
| | § | |
| SEAN RADIN, | § | |
| | § | |
| Defendant. | § | DALLAS COUNTY, TEXAS |
| | § | |

## PLAINTIFF'S ORIGINAL PETITION FOR BREACH OF CONTRACT AND INJUNCTIVE RELIEF

Plaintiff Ryan, LLC ("Ryan" or "Plaintiff") files this its Original Petition for Breach of Contract and Injunctive Relief against Defendant Sean Radin ("Defendant" or "Radin") (together the "Parties") and would respectfully show the Court as follows:

## PARTIES

1. Ryan, LLC is a Delaware limited liability company with its principal place of business in Dallas, Texas. Ryan is registered and authorized to do business in the State of Texas.

2. Defendant, Sean Radin, is a former employee of Ryan. He may be served with process at his home address: 916 3rd Street Southeast, Washington, DC 20003; his work address: 800 W Broad St #7005, Falls Church, VA 22040; or wherever he may be found.

## JURISDICTION, VENUE AND DISCOVERY LEVEL

3. Jurisdiction is proper because the amount in controversy exceeds the jurisdictional minimum of this Court. Venue is proper in this court because the Parties entered into the Employee Agreement[1] (the "Agreement") that is the subject matter of this action in Dallas, Texas; agreed

---

[1] A true and correct copy of the Agreement is attached to this petition as Exhibit A.

**PLAINTIFF'S ORIGINAL PETITION**

Page 1

that is performable in Dallas County, Texas; and agreed that exclusive venue for any proceeding under the Agreement would lie in Dallas County, Texas. Further, a substantial part of the controversy among the Parties arose in Dallas County, Texas. Discovery will be conducted under Level 3.

## RULE 47 STATEMENT

4. The damages sought are within the jurisdictional limits of this Court. The Plaintiff seeks monetary relief over $250,000, but not more than $1,000,000, and non-monetary relief.

## FACTUAL BACKGROUND

### A. Ryan's Business.

5. Ryan is a global leader in corporate tax services. Through its multi-disciplinary expertise and industry-leading innovation, Ryan offers tax recovery services; consulting services to enhance tax strategies; advocacy services to identify and promote legislative tax relief and policy; compliance services to help clients manage their tax compliance processes; and technology services to assist clients with identifying and implementing tax-related software solutions.

6. Ryan has invested a substantial amount of time, effort, and money developing its goodwill, pricing, service offerings, software products, and marketing strategies that allow it to offer its services to profitably serve its customers throughout the world.

7. All of the above described efforts, information and processes and Ryan's customer and pricing information, including customer names, contract terms, legislative priorities and strategies, employee names and skills, costs, customer specifications, and pricing models are confidential and proprietary, and considered to be part of its trade secrets (collectively, "Confidential Information").

8. Ryan takes calculated measures to maintain the confidentiality of its Confidential Information. For example, it retains various types of Confidential Information on password-

protected systems and requires employees to execute individual confidentiality agreements upon receipt of Confidential Information.

9. If a former employee such as Radin were to utilize Ryan's Confidential Information in the service of himself or any of Ryan's competitors, the competitors could undercut Ryan's hard-earned business goodwill and lure Ryan's customers away. In addition, access to Ryan's Confidential Information would allow competitors to use Ryan's strategies and processes that the company has spent years developing to target Ryan customers, co-opt Ryan's tax strategies, implement Ryan's service delivery strategies, jeopardize the company's business alliances, and target its most profitable accounts.

**B.      Radin's Employment with Ryan.**

10. Ryan employed Radin as a Director from February 2022 until separation from the company on October 6, 2023.

11. During his employment, Radin routinely accessed and generated Confidential Information for Ryan.

12. Upon his hire, Radin entered into the Agreement by and between himself and Ryan. In order to safeguard Ryan's Confidential Information, the Agreement contained, among other things, certain nondisclosure requirements and restrictive covenants governing Radin's post-employment conduct. Specifically, the Agreement provided:

> 1. **Nondisclosure of Confidential Information**
>
> Employee agrees that (i) the goodwill of Company depends upon, among other things, keeping the Confidential Information (as defined below) confidential and that unauthorized disclosure of the Confidential Information would irreparably damage Company, and (ii) disclosure of any Confidential Information to competitors of Company or to the general public would be highly detrimental and cause irreparable damage to Company.
>
> Upon execution of this Agreement, and without regard to Employee's continued employment status, the Company shall be unconditionally obligated to, and shall, provide Employee with new and additional elements of the Company's confidential and proprietary business information (the "Confidential Information"). The Confidential Information may include, without limitation, information relating to persons, firms, and corporations that are or become customers or

accounts of the Company during the term of Employee's employment with the Company ("Customers") and persons, firms, and corporations that are actively solicited by the Company during the term of Employee's employment with the Company to become Customers ("Prospects"), including the names of Customers and Prospects, lists of Customers and Prospects, personal information as to Customers and Prospects, familiarity with Customers' and Prospects' specific tax needs and financial considerations, trade secrets and other of the Company's business information that is not generally or easily obtainable, including specific engagement procedures, techniques, tax saving and mitigation strategies, internal procedures, programs, regular business reports, business plans, projections, budgets, financial information, specific information regarding proposals to Prospects and Customers, and all records, files, manuals, blanks, forms, materials, supplies, computer programs, and other materials furnished to Employee by the Company. All Confidential Information shall be and remain the property of the Company, and Employee shall safely keep and preserve such property.

In consideration of the training and support provided by the Company to Employee, and the compensation and other consideration to be paid to Employee under this Agreement, Employee agrees that Employee will not, without the written consent of the Company, disclose or make any use of such Confidential Information except as may be required in the course of rendering services under this Agreement. Further, Employee agrees to immediately deliver to the Company all Confidential Information and all copies thereof upon termination of employment. In the event the laws of the State applicable to the enforcement of this Section impose a reasonable time limitation, the period shall be deemed to be the term of Employee's employment with the Company and for twenty-four (24) months thereafter.

13.  The Agreement further provided:

2.  **Duty of Loyalty**

During the Employee's employment with the Company, Employee will avoid conflicts of interest, remain loyal to the Company, and will not knowingly compete with it or otherwise engage in any conduct harmful to the business interests of the Company.

14.  The Agreement further provided:

5.  **Non-Solicitation of Employees**

During the term of Employee's employment with the Company and for twenty-four (24) months thereafter, Employee will not, without the written consent of Company, directly or indirectly, in any individual or representative capacity whatsoever or through any form of ownership (i) solicit, induce or attempt to induce any employee of the Company or any independent contractor providing services to or on behalf of the Company, to terminate employment or the independent contractor business relationship with the Company, or (ii) hire or engage as an employee or independent contractor any person who is or was employed by the Company during the term of Employee's employment with the Company.

6.  **Non-Solicitation of Customers or Prospects**

During the term of Employee's employment with the Company and for twenty-four (24) months thereafter, Employee will not, without the written consent of Company, directly or indirectly, in any individual or representative capacity whatsoever or through any form of ownership, solicit, induce or attempt to induce any Customer or Prospect, in North America and/or Europe (i) with whom Employee had any business contact during the twenty-four (24) months preceding termination of employment with the Company or (ii) about whom Employee learned Confidential Information as a result of the employment, to withdraw, curtail, divert, or cancel any

Client's business or Prospect's prospective business with Company or in any manner modify or fail to enter into any actual or potential business relationship with Company.

7. **Tolling**

Employee agrees that during any period in which Employee is in breach of the covenants contained in Sections 1, 5, and/or 6, the time period of such covenants shall be extended for an amount of time equal to the period during which Employee is in breach thereof. Employee further acknowledges and agrees that if Employee violates any covenant contained in this Section 7 and Company brings legal action for injunctive or other relief, Company shall not, as a result of the time involved in obtaining the relief through litigation, be deprived of the benefit of the full period of any such covenant. Accordingly, the covenants of Employee contained in this Section 7 shall be deemed to have duration as specified above, which periods shall commence upon the later of (i) the ending date above stated or (ii) the date of entry by a court of competent jurisdiction of a final judgment enforcing the covenants of Employee set forth in this Section 7.

15. The Agreement further provided:

12. **Governing Law**

This Agreement shall be governed and construed in accordance with the laws of the State of Texas. This Agreement is performable in Dallas County, Texas, exclusive venue of any suit or other proceeding hereunder shall be properly placed in Dallas County, Texas, and both parties waive any objection to venue of any such proceeding therein. This Agreement is understood to be clear and enforceable as written. Nevertheless, should Employee later claim any provision is unclear, unenforceable, overbroad or is inapplicable to any competitive activity in which Employee intends to engage, or any obligations Employee may owe to Company under this Agreement or if Employee intends to make any claim whatsoever against Company, Employee must notify Company, in writing, of Employee's full and complete position at least fourteen (14) calendar days before engaging in such activity and/or filing any lawsuit or demand for arbitration. During the fourteen-day period, Company and Employee must meet face-to-face, in good faith, to discuss resolution of the claim or issue. A mediator may be hired, at Company's expense, to facilitate the discussion. If Employee fails to comply with this conflict resolution provision, Employee waives his right to challenge the scope, clarity, applicability, breadth or enforceability of the Agreement and its competitive restrictions. However, all rights of Employee will be reserved if Employee complies with this conflict resolution provision even if no agreement is reached during the face-to-face conference during the fourteen-day period.

16. In reliance on the Agreement and other protective measures Ryan implemented to safeguard its Confidential information, Ryan gave Radin access to, and he used and/or developed, a substantial amount of Ryan's Confidential Information, including, without limitation, customer names and contact information, familiarity with specific tax needs and financial considerations of customers and prospects, trade secrets and other of the Company's business information that is not generally or easily obtainable, including specific engagement procedures, techniques, tax saving and mitigation strategies, internal procedures, programs, regular business reports, business plans,

projections, budgets, financial information, and specific information regarding proposals to customers and prospects.

### C. Radin Left Ryan and Immediately Began Working for a Competitor.

17. Radin's employment with Ryan ended on October 6, 2023.

18. Following Radin's departure from Ryan, Radin began working for Cavalry Real Estate Advisors, a direct competitor of Ryan ("Cavalry").

### D. Radin Has Brazenly Violated His Post-Employment Obligations to Ryan and Has Explicitly Encouraged Others to Do the Same.

19. In violation of his contractual obligations, Radin has solicited Ryan employees to leave Ryan, join him at Cavalry, and poach Ryan's clients for Calvary.

20. In particular, Radin directly solicited Ryan employee Rob Fey, a Senior Manager with Ryan, to leave Ryan and join him at Cavalry.

21. During his solicitation of Fey, Radin requested that Fey not only join him at Cavalry, but **also requested that Fey abscond with Ryan's key client lists, files and other valuable Confidential Information** to assist Cavalry's bid to acquire Ryan's clients.

22. When Fey responded he had contractual obligations that would prohibit him from joining Cavalry, Radin, who is a licensed attorney, explained his method for avoiding his own contractual obligations to Ryan. He informed Fey that he would simply have Ross Litkenhous, the owner of Cavalry, reach out to Ryan's clients instead of Radin making the contacts directly. Fey also had direct communications with Litkenhous who confirmed his and Radin's strategy for evading Radin's contractual obligations and concealing any contractual violations. Radin explicitly told Fey he would be able to skirt his contractual obligations to Ryan in like manner if he joined Cavalry. Fey refused their offer.

23. However, Radin's efforts to evade his contractual obligations appear to have worked in other respects. Former Ryan Senior Analyst Bianca Hoen has joined Radin at Cavalry. Hoen and Radin have worked closely together for years. Hoen announced her resignation from Ryan quite abruptly on April 3, 2024, providing only three days' notice of her departure. She described the reason for her departure as a time for her to pursue new challenges and opportunities but did not identify her new employer. When Ryan offered to retain Ms. Hoen, a high-performing Team Member, she provided Ryan with a heavily redacted offer letter she received from her future employer, which we now know to be Calvary. Ms. Hoen took great pains to conceal the identity of her future employer thereby protecting her former colleague, Mr. Radin, who violated his Agreement with Ryan. Just days after Ms. Hoen's abrupt departure from Ryan, she began working at Calvary in a role very similar to the one she held for Ryan.

24. Further, in the aftermath of Radin's departure from Ryan, and in furtherance of his scheme to evade his contractual obligations, Radin, either directly or through proxies, has recruited at least two Ryan clients for whom Radin provided services on behalf of Ryan, to switch from Ryan to Cavalry.

25. Ryan has suffered, and will continue to suffer, monetary damages from lost revenue, productivity, and business goodwill based on Radin's breaches of his obligations under the Agreement.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT

26. Ryan incorporates by reference the preceding paragraphs in this Complaint.

27. Ryan and Radin entered into the Agreement requiring Radin, to among other things, safeguard and not disclose Ryan's Confidential Information to any third party without

Ryan's permission. The Agreement also prohibits Radin from soliciting Ryan's employees to leave its employ or its clients to move their business.

28. Ryan performed all of its contractual obligations to Radin, including, but not limited to, paying him all of his agreed upon wages and benefits and providing him access to its Confidential Information.

29. Radin breached his obligations to Ryan pursuant to the Agreement by, among other things, removing, using and otherwise disclosing Ryan's Confidential Information without permission and by soliciting Ryan's employees and clients.

30. As a direct and proximate result of Radin's breaches of the Agreement, Ryan has suffered and continues to suffer damages and losses and is entitled to actual damages, interest, court costs, and attorneys' fees.

## COUNT II: REQUEST FOR INJUNCTIVE RELIEF

31. Ryan incorporates by reference the preceding allegations as though fully set forth herein.

32. By reason of Radin's above-described acts, Ryan has and will continue to suffer irreparable harm for which there is no adequate remedy at law including, but not limited to, loss of revenue, loss of business goodwill, loss of competitive advantage in the industry, loss of customers, and loss of confidential information and trade secrets. Monetary damages cannot adequately compensate Ryan for these losses, even if Radin was able to respond in payment of monetary damages.

33. Injunctive relief is necessary to preserve and protect Ryan's proprietary information, including trade secrets and other confidential information, in which it has invested substantial time, money and energy, and which it has taken substantial steps to preserve.

34. Unless this Court enjoins Radin as requested herein, Ryan will continue to suffer significant and irreparable harm. Ryan has no adequate remedy at law that could compensate it for the damage that Radin is causing by flouting his contractual restrictions and conspiring with others to do the same.

35. Radin will not be harmed by injunctive relief that enforces his legal obligations to Ryan.

36. Accordingly, Ryan requests that the Court issue a temporary injunction, and a permanent injunction against Radin:

   a. Restraining him from using or disclosing Ryan's Confidential Information and trade secrets for any purpose;

   b. Ordering to return all confidential and proprietary information belonging to Ryan that remains in his care, custody or control;

   c. Ordering Radin to cease soliciting or otherwise encouraging any employees or clients of Ryan to leave Ryan;

   d. Restraining all persons or entities to whom Radin has provided or transferred Ryan's Confidential Information to immediately cease and desist from using that information; and

   e. Restraining all persons in active concert, privity, or participation with Radin from aiding, contributing to, causing, or abetting their engagement in any such prohibited conduct.

## CONDITIONS PRECEDENT

37. All conditions precedent to recovery of the relief requested herein have occurred.

## CONCLUSION AND PRAYER

Plaintiff prays that notice and citation issue as required by law; that Defendant Radin be required to appear and answer; and that, upon trial, the Court determine and declare the rights and obligations of the Parties as delineated above. Plaintiff further prays for all other relief to which it may be justly entitled.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK, & STEWART, P.C.**

By: /s/ *Andrew T. Turner*

ANDREW T. TURNER
Texas Bar No. 24008968
andrew.turner@ogletree.com
JENNIFER SMILEY
Texas Bar No. 24082004
jennifer.smiley@ogletree.com

500 Preston Commons
8117 Preston Road
Dallas, Texas 75225
(214) 987-3800 (Telephone)
(214) 987-3927 (Facsimile)

**ATTORNEYS FOR PLAINTIFF
RYAN, LLC**

# EXHIBIT A



# EMPLOYEE AGREEMENT

**Acknowledgements**

The undersigned ("Employee") acknowledges that Ryan LLC, including all of its subsidiaries and affiliates (collectively, the "Company") has expended and will continue to expend substantial time, money, effort, and other resources to develop its goodwill, confidential information, trade secrets, and methods of doing business and that the Company has a legitimate business interest in protecting same. Employee further acknowledges that such confidential information, trade secrets, and proprietary methods provide the Company with a competitive advantage in the marketplace and are kept confidential and not shared except with those employees with a need to know them. Employee further acknowledges that Employee will be provided certain confidential information, Company secrets, and proprietary information not generally known or available to the Company's competitors or the general public. Employee further acknowledges that such goodwill, confidential information, trade secrets, and proprietary methods provide the Company with a means to (i) attract, retain, and motivate Employee to remain an employee of the Company, (ii) promote productivity, and (iii) attract, retain, and motivate a stable, competent, and specialized workforce.

Employee and the Company wish to specify their understandings and agreements regarding these and related matters.

**FOR VALUABLE CONSIDERATION**, including but not limited to employment; continued employment; promotion; unique, extraordinary, and specialized development and training; valuable confidential business or professional information; and access to certain of the Company's Confidential Information, substantial knowledge of and relationships with Customers and Prospects, Company secrets, and other proprietary information, Employee agrees with the Company as follows:

**1. Nondisclosure of Confidential Information**

Employee agrees that (i) the goodwill of Company depends upon, among other things, keeping the Confidential Information (as defined below) confidential and that unauthorized disclosure of the Confidential Information would irreparably damage Company, and (ii) disclosure of any Confidential Information to competitors of Company or to the general public would be highly detrimental and cause irreparable damage to Company.

Upon execution of this Agreement, and without regard to Employee's continued employment status, the Company shall be unconditionally obligated to, and shall, provide Employee with new and additional elements of the Company's confidential and proprietary business information (the "Confidential Information"). The Confidential Information may include, without limitation, information relating to persons, firms, and corporations that are or become customers or accounts of the Company during the term of Employee's employment with the Company ("Customers") and persons, firms, and corporations that are actively solicited by the Company during the term of Employee's employment with the Company to become Customers ("Prospects"), including the names of Customers and Prospects, lists of Customers and Prospects, personal information as to Customers and Prospects, familiarity with Customers' and Prospects' specific tax needs and financial considerations, trade secrets and other of the Company's business information that is not generally or easily obtainable, including specific engagement procedures, techniques, tax saving and mitigation strategies, internal procedures, programs, regular business reports, business plans, projections, budgets, financial information, specific information regarding proposals to Prospects and Customers, and all records, files, manuals, blanks, forms, materials, supplies, computer programs, and other materials furnished to Employee by the Company. All Confidential Information shall be and remain the property of the Company, and Employee shall safely keep and preserve such property.

In consideration of the training and support provided by the Company to Employee, and the compensation and other consideration to be paid to Employee under this Agreement, Employee agrees that Employee will not, without the written consent of the Company, disclose or make any use of such Confidential Information except as may be required in the course of rendering services under this Agreement. Further, Employee agrees to immediately deliver to the Company all Confidential Information and all copies thereof upon termination of employment. In the event the laws of the State applicable to the enforcement of this Section impose a reasonable time limitation, the period shall be deemed to be the term of Employee's employment with the Company and for twenty-four (24) months thereafter.

## 2. Duty of Loyalty

During the Employee's employment with the Company, Employee will avoid conflicts of interest, remain loyal to the Company, and will not knowingly compete with it or otherwise engage in any conduct harmful to the business interests of the Company.

## 3. Discoveries and Inventions

Employee agrees that all discoveries, inventions, ideas, contributions, and improvements (whether or not patentable or copyrightable) which relate in any way to the Company's business, or which result from duties assigned by the Company to Employee and which, while Employee is employed by the Company, are developed, conceived or applied in practice by Employee, either alone or together with others at any time either during or after normal working hours, whether on or off Employee's job are and will continue to be the exclusive property of the Company. Employee further agrees to promptly and fully disclose and assign all of the foregoing to the Company without any further consideration. Employee acknowledges that any and all such discoveries, inventions, ideas, contributions, and improvements which were so developed, conceived or applied in practice by Employee at any time prior to the date of this Agreement during the term of Employee's employment and which relate to the actual or anticipated business activities of the Company, or result from or are suggested by, work which Employee has performed on behalf of the Company, belong exclusively to the Company.

At any time during or after Employee's employment with the Company, Employee shall, at the Company's expense, sign all papers and undertake such other acts and things as the Company may reasonably require of Employee to protect its rights to such discoveries, inventions, ideas, contributions and improvements, including making application for, obtaining and enforcing patents, copyrights and the like under the laws of the United States or foreign countries.

## 4. Former Employers

Employee represents to the Company that (i) except as disclosed to the Company in writing on or before the date hereof, Employee is not a party to any agreement or understanding, written or oral, which may restrict Employee in any manner from engaging in any activities which Employee may be required or expected to perform in connection with Employee's duties with the Company, (ii) Employee will not disclose or use any confidential information that belongs to a former employer or other third party for the Company's benefit without the prior consent of such party, and (iii) Employee has returned or destroyed any papers in Employee's possession, which contained a former employer's or other third party's confidential information which Employee has a duty not to disclose.

## 5. Non-Solicitation of Employees

During the term of Employee's employment with the Company and for twenty-four (24) months thereafter, Employee will not, without the written consent of Company, directly or indirectly, in any individual or representative capacity whatsoever or through any form of ownership (i) solicit, induce or attempt to induce any employee of the Company or any independent contractor providing services to or on behalf of the Company, to terminate employment or the independent contractor business relationship with the Company, or (ii) hire or engage as an employee or independent contractor any person who is or was employed by the Company during the term of Employee's employment with the Company.

## 6. Non-Solicitation of Customers or Prospects

During the term of Employee's employment with the Company and for twenty-four (24) months thereafter, Employee will not, without the written consent of Company, directly or indirectly, in any individual or representative capacity whatsoever or through any form of ownership, solicit, induce or attempt to induce any Customer or Prospect, in North America and/or Europe (i) with whom Employee had any business contact during the twenty-four (24) months preceding termination of employment with the Company or (ii) about whom Employee learned Confidential Information as a result of the employment, to withdraw, curtail, divert, or cancel any Client's business or Prospect's prospective business with Company or in any manner modify or fail to enter into any actual or potential business relationship with Company.

## 7. Tolling

Employee agrees that during any period in which Employee is in breach of the covenants contained in Sections 1, 5, and/or 6, the time period of such covenants shall be extended for an amount of time equal to the period during which Employee is in breach thereof. Employee further acknowledges and agrees that if Employee violates any covenant contained in this Section 7 and Company brings legal action for injunctive or other relief, Company shall not, as a result of the time involved in obtaining the relief through litigation, be deprived of the benefit of the full period of any such covenant. Accordingly, the covenants of Employee contained in this Section 7 shall be deemed to have duration as specified above, which periods shall commence upon the later of (i) the ending date above stated or (ii) the date of entry by a court of competent jurisdiction of a final judgment enforcing the covenants of Employee set forth in this Section 7.

8. **Employment at Will and Compliance with Company Policies and Procedures**

Employee acknowledges and agrees that Employee's employment with the Company can be terminated, for any reason whatsoever, with or without cause, and with or without notice at any time, at will by either Employee or the Company.

Employee acknowledges and agrees that the Company may specify any terms or conditions of employment, and any policies or procedures relating to such employment, and may from time to time modify such terms, conditions, policies and procedures, as it may determine to be advisable in its sole discretion. Employee agrees at all times to adhere to the Company's terms, conditions, policies and procedures, as the same may be updated and modified from time to time.

9. **Consent to Respond to Employment Reference Inquiries**

Employee grants the Company permission to speak and respond candidly with any person(s) who may at any time in the future be checking Employee's references or otherwise be inquiring about Employee's job performance at the Company, and Employee acknowledges that the Company will rely on the existence of this signed Agreement as the basis for providing any such additional information concerning Employee.

10. **Construction of Agreement**

Whenever there is a conflict between an applicable law of a jurisdiction which governs the subject matter of this Agreement and any provision of this Agreement, the affected portions of this Agreement shall be deemed redrawn, as to such jurisdiction only, in a manner which (i) eliminates any invalid, illegal or completely unenforceable provision, and (ii) as to any provision which is held to be excessively broad as to time, duration, geographic area, scope, activity or subject, limits or reduces such provision so as to be enforceable to the maximum extent compatible with the applicable law.

11. **Enforcement of Agreement**

Employee hereby expressly acknowledges that the loss of value to the Company, due to the violation or threatened violation of the covenants herein contained, cannot be estimated with any certainty and cannot be fairly and adequately compensated by damages and that the Company's loss through violation of this Agreement may be enforced by injunctive relief to which the Company shall be entitled in addition to any other rights which the Company may possess. Employee further hereby stipulates and admits that such injunctive relief is absolutely necessary because immediate, ongoing, and irreparable injuries, unfair competition, or damages will result to the Company in the event of a violation or threatened violation of any of the covenants made herein and that the restraints set forth in this Agreement are reasonable and fair and in the event a court determines otherwise, the parties agree that the court is authorized and will be requested by both parties to revise the scope of the restraint, including adding new or different language, so as to make the restraints reasonable and enforceable. In the event the Company is forced to seek injunctive relief to restrict the violation or threatened violation of any such covenant by the Employee and Employee's partners, agents, servants, employers, and all persons acting for or with Employee and to enforce the provisions of this Agreement and the Company prevails in such action, Employee agrees to pay the Company its costs, including reasonable attorneys' fees, for obtaining such injunctive relief. In the event Company seeks an injunction to enforce its rights under this Agreement, bond in the amount of $1,000 shall be adequate security for such injunctive relief.

12. **Governing Law**

This Agreement shall be governed and construed in accordance with the laws of the State of Texas. This Agreement is performable in Dallas County, Texas, exclusive venue of any suit or other proceeding hereunder shall be properly placed in Dallas County, Texas, and both parties waive any objection to venue of any such proceeding therein. This Agreement is understood to be clear and enforceable as written. Nevertheless, should Employee later claim any provision is unclear, unenforceable, overbroad or is inapplicable to any competitive activity in which Employee intends to engage, or any obligations Employee may owe to Company under this Agreement or if Employee intends to make any claim whatsoever against Company, Employee must notify Company, in writing, of Employee's full and complete position at least fourteen (14) calendar days before engaging in such activity and/or filing any lawsuit or demand for arbitration. During the fourteen-day period, Company and Employee must meet face-to-face, in good faith, to discuss resolution of the claim or issue. A mediator may be hired, at Company's expense, to facilitate the discussion. If Employee fails to comply with this conflict resolution provision, Employee waives his right to challenge the scope, clarity, applicability, breadth or enforceability of the Agreement and its competitive restrictions. However, all rights of Employee will be reserved if Employee complies with this conflict resolution provision even if no agreement is reached during the face-to-face conference during the fourteen-day period.

13. **Assignment**

Company may assign the rights and benefits given to it in this Agreement, and this Agreement shall survive any sale of assets, merger, consolidation, or other change in the corporate structure of Company. The duties of Employee hereunder are personal and may not be assigned.

3

## 14. **Binding Effect**

This Agreement shall be binding upon and inure to the benefit of the successors, assigns, legal representatives, and heirs of the parties.

**ACKNOWLEDGED AND AGREED:**

_____
Employee's Signature

_____
Date

_____
Employee's Name (Please Print)

_____
Home Address

4

| Document Attachment | Signature Type | Signed By | Signature Date | Signature Statement |
|---|---|---|---|---|
| Employee Agreement_U.S. Only.pdf | e-signature | Sean Radin (Terminated) (RC02988) | 11/21/2022 09:50:19 AM | By signing this document, you have read, understand, and agree to the terms of this agreement. |

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Nancy Dushion on behalf of Andrew Turner
Bar No. 24008968
nancy.dushion@odnss.com
Envelope ID: 87812082
Filing Code Description: Original Petition
Filing Description:
Status as of 5/21/2024 10:09 AM CST

Associated Case Party: RYAN LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Andrew T. Turner | | andrew.turner@ogletree.com | 5/16/2024 11:05:32 AM | SENT |
| Jennifer Smiley | | jennifer.smiley@ogletree.com | 5/16/2024 11:05:32 AM | SENT |
| Nancy Dushion | | nancy.dushion@ogletree.com | 5/16/2024 11:05:32 AM | SENT |
| Dallas Docketing | | DALDocketing@ogletree.com | 5/16/2024 11:05:32 AM | SENT |